UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS ALLEN COLER,

    Plaintiff,

v.                                                                 Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,            Case No. 1:20-cv-00553

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making the decision and whether there exists in the record substantial evidence supporting that decision. *See*

*Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

On January 3, 2018, Plaintiff filed a Title II application for a period of disability and DIB, alleging disability beginning October 6, 2016. The claim was denied initially on May 16, 2018. Plaintiff appealed and requested a hearing before an ALJ. That hearing was held on May 6, 2019. On June 19, 2019, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Act. On April 29, 2020, the Appeals Council denied Plaintiff's request for

administrative review, rending the ALJ's decision the final decision of the Commissioner. Plaintiff filed this appeal on June 17, 2020.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national

---

[1]  1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing his or her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

The ALJ determined that Plaintiff met the insured status requirement through March 31, 2020, and had not engaged in substantial gainful activity since October 6, 2016. (ECF No. 15-2, PageID.63.) At step two, the ALJ determined that Plaintiff had the following severe impairments: obesity and cervical degenerative disc disease after a C4-5 fusion. (*Id.*) At step three, the ALJ found that the Plaintiff's impairments did not meet or medically equal the criteria of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, noting that his impairments did not medically equal a listing in 1.04.

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff had the residual capacity to perform light work, but could "only occasionally stoop or climb ladders, ropes, or scaffolds; frequently climb ramps or stairs, balance, kneel, crouch, and crawl; with only occasional overhead reaching, bilaterally; frequently handle objects, bilaterally; with only frequent exposure to vibration and the hazards of moving machinery and unprotected heights." (ECF No. 15-2, PageID.65-66.)

The ALJ found that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a

4

claimant has the vocational qualifications to perform *specific* jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health, Ed. and Welfare*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Here, the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 695,000 jobs nationally that an individual with Plaintiff's RFC could perform, even with his limitations. This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

On appeal, Plaintiff raises two primary claims of error. First, Plaintiff claims that he meets the requirements of Listing 1.04A, and therefore the ALJ should have deemed him disabled. Second, he claims that substantial evidence does not support the ALJ's assessment of his RFC. Additionally, Plaintiff argues that the ALJ did not develop the record sufficiently given his pro se status during the administrative proceedings and generally exhibited hostility toward Plaintiff during a hearing that should not be adversarial. Because I conclude that the case must be remanded for further fact finding as to whether the Plaintiff should prevail at step three, I have not addressed

the Plaintiff's arguments regarding the ALJ's determination of the RFC or development of the record.[2]

At step three, the claimant bears the burden to establish that his impairments meet a listed impairment. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). Moreover, all of the criteria must be met concurrently for a period of twelve continuous months. *See McKeel v. Comm'r of Soc. Sec.*, No. 14-cv-12815, 2015 WL 3932546, *8 (E.D. Mich. June 26, 2015) (citing 20 C.F.R. § 404.1525(c)(3), (4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00D ("[b]ecause abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation")).

The Sixth Circuit has held that an ALJ commits reversible error by failing to analyze the claimant's conditions in relation to the Listed Impairment. *Reynolds v. Comm'r of Soc. Sec.,* 424 F. App'x 411, 415–16 (6th Cir. 2011). In *Reynolds,* the court summarized how an ALJ should analyze a physical condition in relation to the listing: "In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order

---

[2] I do note that the hearing took on a more adversarial tone, and the ALJ exhibited more frustration in dealing with the then-pro se claimant, than is generally observed in a hearing that is required to be non-adversarial in nature. However, Plaintiff now has counsel who will have the opportunity to develop the record further if necessary and appropriate.

6

to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* at 416 (citing *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 120 (3d Cir. 2000); *Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir. 1999); *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996)); *see also M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846 (E.D. Mich. Mar. 21, 2012). However, in Reynolds, the ALJ "skipped" the analysis of the listings altogether with regard to the claimant's physical impairments.

By contrast, in *Forrest v. Commissioner of Social Security,* 591 F. App'x 359, 364-66 (6th Cir. 2014), the Sixth Circuit held that the analysis required at step three is less onerous than that required to establish "good reasons" under 20 C.F.R. § 404.1527(d) for rejecting a treating physician's opinion. The court declined to extend the holding in *Wilson,* 378 F.3d at 544–48 ("circumscribed form of harmless error review"), to step three. 591 F. App'x at 365. *Forrest* held that, where the comparison of the medical findings to any Listed Impairment is sparse, the Court can consider the ALJ's entire decision in determining whether substantial evidence supports the step three finding. 591 F. App'x at 366; *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Bradford v. Sec'y of Dept. of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986).

Here, the ALJ's discussion of the listing is scant. He states only:

> The record does not establish the medical signs, symptoms, laboratory findings, or degree of functional limitation required to meet or equal the criteria of any listed impairment and no acceptable medical source designated to make equivalency findings has concluded that claimant's impairments medically equal a listed impairment in listing[] 1.04. Therefore, I conclude the claimant's impairments do not satisfy the requirements of the listings indicated.

(PageID.65.) However, the Court will consider other portions of the ALJ's opinion to determine whether meaningful judicial review is possible. *Forrest*, 591 F. App'x at 365.

Listing 1.04 requires a disorder of the spine, such as a degenerative disc disease or herniated nucleus pulposus, resulting in the compromise of a nerve root or the spinal cord. *See*

7

C.F.R. pt. 404, subpt. P, app. 1, § 1.04. To satisfy the Listing, the Plaintiff must show that the above criteria are met with one of the additional three subparts. *Id.* The first subpart, Listing 1.04(A), requires: "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, [and] motor loss (atrophy with associated muscle weakness) accompanied by sensory or reflex loss…." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04(A). "For a disorder of the spine to meet Listing 1.04A, the simultaneous presence of all of the medical criteria in paragraph A must continue, or be expected to continue, for a continuous period of at least 12 months. Stated differently, when the paragraph A criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04A." *Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 WL 1214456, at *4 (E.D. Mich. Feb. 24, 2017) (internal quotations and citations omitted).

      The ALJ determined that Plaintiff had reported pain related to degenerative disc disease of the cervical spine including, in March 2017, moderate stenosis at the C4-7 level, which resulted in neck pain that was radiating to his head and left arm with numbness of the left arm and wrist. (PageID.66-67.) However, in August 2017, Plaintiff underwent C4-5 fusion surgery. (PageID.67.) A follow-up radiological examination in December 2017 showed continued mild to severe multilevel stenosis and mild degenerative disc disease, but no evidence of complication from the C4-5 fusion surgery. (PageID.67, citing PageID.674, 841.) On January 4, 2019, Plaintiff underwent an MRI that found "no evidence of spinal stenosis," although there was "subtle enhancement of spinal cord at C4-C5 level," possibly "due to inflammation, demyelination or infection." (PageID.67, citing PageID.928-29.) The radiologist noted this was "most likely artifact" from "prior cervical spine fusion." (PageID.930.)

From this discussion, the Commissioner argues that Plaintiff did not satisfy all the requirements of Listing 1.04 for a continuous period of at least 12 months because, as of January 2019, an MRI showed no signs of "spinal stenosis." Moreover, the Commissioner argues, Plaintiff's treatment notes failed to document consistent sensory or reflex loss and showed mild to normal range of motion in his cervical spine and generally normal strength. Therefore, the Commissioner says there was ample basis on which to find that Plaintiff did not prove that his condition met or exceeded any listing.

Plaintiff counters that Iman S. Abou-Chakra, M.D., a Physical Medicine and Rehabilitation specialist, indicated that Plaintiff still had "cervical spondylosis without myelopathy" as of June 20, 2018. (PageID.918.) He argues his doctor's assessment on that date is sufficient to satisfy the duration requirement of the listing.

The ALJ did not address that assessment, and the Court is left to wonder whether it was appropriately discounted and, if so, on what basis. Nor did the ALJ consider notations regarding pain, limitation of motion of the spine, and motor, sensory, and reflex loss. Each of those symptoms appears in the record,[3] but it is for the ALJ in the first instance to determine whether they persisted for the required duration. In these circumstances, the ALJ's unexplained conclusion is insufficient to permit meaningful judicial review of his determination that Coler's impairments do not meet or medically equal Listing 1.04. *Brock v. Colvin*, 125 F. Supp. 3d 671, 673 (N.D. Ohio Aug. 21, 2015) (collecting cases). It may be that the evidence introduced will prove insufficient for Plaintiff to

---

[3] For example, notes from a December 28, 2017 examination indicate that Plaintiff's "muscle strength is full and equal in bilateral upper extremities," but his "Left Cervical spurling's is positive, reproducing pain radiating down neck, left shoulder and lateral arm." (PageID.846.) There was also "evidence of an old left C5 motor radiculopathy with axonal continuity and reinnervation," "signs of active denervation in the left deltoid," suggesting "a possible acute C4 motor radiculopathy." (PageID.846.) Another of Plaintiff's providers stated that treatment for left shoulder weakness and back pain began in November 2016. (PageID.532, 558.)

prove that he met or equaled Listing 1.04. However, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Teel v. Comm'r of Soc. Sec.*, 2013 WL 6180302, at *12 (N.D. Ohio Nov. 24, 2013) ("Absent some analysis from the ALJ regarding the medical observations and their relation to the criteria of Listing 1.04(C), this Court cannot meaningfully determine whether substantial evidence supports the ALJ's conclusion that Plaintiff's degenerative disc disease did not satisfy that Listing."). As the ALJ failed to articulate the basis for his conclusion at step three, a remand is required.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.

Dated: September 20, 2021   /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge